# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4130 | **DATE** | 3/18/2003 |
| **CASE TITLE** | The Illinois Coalition vs. The Illinois Council | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order. Defendants are ordered to pay the Coalition $98,013.210 in attorneys' fees and costs.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 20 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 43 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TP | courtroom deputy's initials | 03 MAR 19 AM 8:15 Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THE ILLINOIS COALITION AGAINST HANDGUN VIOLENCE,<br><br>Plaintiff,<br><br>v.<br><br>THE ILLINOIS COUNCIL AGAINST HANDGUN VIOLENCE, ILLINOIS STATE RIFLE ASSOCIATION, DONALD T. VANDERMYDE, MEDINA J. FLANAGAN, PETER FLANAGAN, AND JOHN DOES 1-5,<br><br>Defendants. | No. 02 C 4130<br>Judge James B. Zagel |



## MEMORANDUM OPINION AND ORDER

Plaintiff, Illinois Coalition Against Handgun Violence ("the Coalition"), is a not-for-profit corporation dedicated to the public education and awareness of firearms and firearms violence and advocates gun control legislation. Because of its own administrative oversight, the Coalition failed to timely file its 2001 Annual Report as required by the Illinois Secretary of State. The Illinois Secretary of State routinely dissolved the Coalition as an Illinois corporation for failure to file its annual report for 2001. Subsequently, defendant Todd Vandermyde formed the Illinois Council against Handgun Violence ("the Council"). Mr. Vandermyde is the Second Vice-President of the Illinois State Rifle association ("ISRA"), an organization whose views and positions are, to put it mildly, adverse to those adopted by the Coalition. The Council espoused views consistent with those of the ISRA and used the ISRA's "Alert Service" to release information about it. On June 10, 2002, the Coalition filed suit in this court and requested a Temporary Restraining Order to stop the Council from using its name. I denied this motion

because I found that there was no threat of immediate, irreparable harm. Two days later, on June 12, 2002, defendants stated in open court that it would cease its infringing activity. On September 13, 2002, defendants and the Coalition entered into an Agreed Injunctive Order in which the Council agreed to stop using its corporate name and other assumed names and also agreed not to dispute the Coalition's claims to trademark rights in these names and trade or service marks registered with the Illinois Secretary of State. However, the parties were unable to resolve the outstanding issue of monetary damages incurred by the Coalition, and on December 13, 2002, entered into a binding Arbitration Agreement with respect to the remaining issues, primarily with respect to whether the Coalition was entitled to recover reasonable attorneys' fees and if so, from which defendant or defendants. In the Arbitration Agreement, the Council agreed that its use of the name, "The Illinois Council Against Handgun Violence," and "ICHV" from May 13, 2002, to June 11, 2002, constituted a violation of the Lanham Act. It was also agreed that the use of "On Target Coalition" and "Health Care Coalition" would have constituted a violation of the Lanham Act had those assumed names been actually used by the Council. Pursuant to the Arbitration Agreement, the Coalition waived any claim for actual damages and at the arbitration hearing, they would only be seeking recovery of reasonable attorneys' fees.

The total sought by the Coalition is $210,155.75. Essentially, I see this request for attorneys' fees as two requests, the dividing point being the date of June 12, 2002. At this time defendants agreed, in open court, to give the Coalition back its name and cease their infringing activity and were thus officially bound by that promise. There is no indication in the record that defendants violated this promise. Defendants argue that the Coalition unnecessarily racked up these fees when it could have resolved the matter much sooner and without taking the matter to

possible legal penalties to themselves were low in comparison to the potential for significant damage to the Coalition. The difficulty here is that evidence indicative of this is circumstantial. However, case law requires that I award at least part of this second fee request. In *Gonzales v. Transfer Technologies, Inc.*, 301 F.3d 608 (7th Cir. 2002), the defendant infringed four of the plaintiff's copyrights. When the plaintiff sued the defendant, the defendant immediately ceased his infringing activity. The plaintiff was awarded the minimum statutory damages for each infringement by the district court judge, but was denied attorneys' fees. The Seventh Circuit vacated and remanded the decision, holding that "the prevailing party in a copyright case in which the monetary stakes are small should have a presumptive entitlement to an award of attorneys' fees." 301 F.3d at 610. Because *Gonzales* is similar to this case in that defendants stopped their infringing activity immediately after suit was filed, the Coalition argues that it should get the presumptive entitlement and thus, the full amount of its requested attorneys' fees. The Seventh Circuit reasoned that "[t]he smaller the damages, provided that there is real, and especially a willful, infringement, the stronger the case for an award of attorneys' fees." *Id.* According to *Gonzales*, "whether to grant or deny attorneys' fees to the prevailing party in a copyright case pretty much [is left to] the discretion of the district judge." 301 F.3d at 609. However, in cases such as this, it is required that "the judge explain the grounds for his decision in sufficient depth to enable their reasonableness to be determined." *Id.* While I am generally reluctant to award such a high sum of attorneys' fees, I am bound by Seventh Circuit precedent, which requires that I award attorneys' fees in a case such as this in which damages are low (or rather, non-existent). Taking into account that (1) the Coalition's discovery conducted after the infringing activity ceased did not produce all that the Coalition hoped to find; (2) evidence of

4

court. The Coalition contends that it attempted to do just that and failed due to defendants' obstinance. What is clear from the record is that the Coalition did attempt to stop the infringing activity, and whether or not it contacted whom defendants believe to be the "correct" people, it is also clear that defendants engaged in wrongful activity. The severity of that wrongdoing is an issue to be addressed with respect to the second part of the Coalition's fee request. Therefore, I find that the first part of the fee request is reasonable, and I award the Coalition the full amount of its attorneys' fees up to June 12, 2002, which is $37,628.75.

The remaining $172,527.00 is a more difficult question, because much of those fees were incurred because I allowed the Coalition to conduct additional discovery in search of additional parties and more evidence of conspiracy–in other words, I allowed the Coalition to go on a brief fishing expedition. As I stated in open court, the Coalition does not have direct evidence of a conspiracy, but it is possible that there might be an inference of conspiracy. Thus, I cannot conclude that this fishing expedition was entirely fruitless. However, the difficulty of quantifying what the Coalition's extra discovery actually produced, coupled with assessing the degree of wrongdoing committed by defendants and which defendants should be held responsible for any fees awarded to the Coalition, makes my decision whether to award the Coalition all or any of the remaining fees very hard.

Defendants characterize their taking the Coalition's name as an "overly cute" joke, while the Coalition would characterize it as "sharp practice." The amount of damage resulting from defendants' actions is not easy to assess–were the parties not representative of opposing sides of a hotly contested issue, defendants' "cute" characterization might be more plausible. However, in this particular context, defendants could be seen as having engaged this activity because the

maliciousness or a conspiracy, if such evidence does exist, is circumstantial and slight at best; and (3) the Coalition bears some responsibility in the prolonging of this case's resolution, as its hostility and anger towards defendants for embarrassing them with their own inattention to important legal requirement is very apparent, I am reducing the $172,527.00 by 65%, which amounts to $60,384.45. Adding to this amount the $37,628.75 that I awarded for attorneys' fees up to June 12, 2002, makes the total amount awarded $98,013.20. To the extent that the basis for *Gonzales'* result is the rationale of deterrence of small damage abuses, the purpose of deterrence is fully met by this large sanction against a not-for-profit organization.

The remaining question is whether the corporate veil of the ISRA should be pierced with respect to this decision. Based on the evidence that I heard, I find that the bulk of the fault lies with Mr. Vandermyde and Peter Flanagan, who manages the ISRA website and who issues bulletins and other ISRA communications through the ISRA's "Alert Service." Relative to the actions of Mr. Vandermyde and Mr. Flanagan, the involvement of Richard Pearson, President of ISRA, is quite small and mostly devoted to reacting to the storm of protest against Mr. Vandermyde and Mr. Flanagan, as Second-Vice President and website/"Alert Service" coordinator, respectively, who occupy positions high enough in ISRA's administration to raise the question of whether their actions were a betrayal of the trust given them by the ISRA or were conduct ratified by the ISRA which allows Mr. Flanagan to manage its website as a volunteer web master. So did they betray the trust of the ISRA? The ISRA rules require that officers like Mr. Vandermyde have to clear with the ISRA Board any activity that might be deemed to conflict with the interests of the ISRA. One reason to suppose that Mr. Vandermyde did not betray the ISRA is that he did present his plan to the Board and they allowed him to proceed. I cannot say

that if the Board had said no that Mr. Vandermyde would have abandoned his plan or resigned from his office and proceeded anyway but I cannot rule on the basis of what is counterfactual. The Board said yes and Mr. Vandermyde's actions received enough of its approval to render the ISRA responsible, at least in part, for his conduct. Mr. Flanagan's case comes closer to ultra vires conduct. The ISRA pays for the networking and access services that allow it to maintain its alert service. But the actual operations are left entirely in his hands presumably because he is an unpaid volunteer, and close supervision of such volunteers is both difficult and self-defeating because of the costs of that supervision. Nevertheless, Mr. Flanagan's actions were committed under the direction of Mr. Vandermyde. If this were not so, the argument for holding the ISRA not responsible for Mr. Flanagan's acts would be stronger.

Therefore, defendants are ordered to pay the Coalition $98,013.20 in attorneys' fees and costs.

ENTER:

James B. Zagel
United States District Judge

DATE: 18 March 2003